# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. _____

LIBERATED SYNDICATION, INC., a Nevada Corporation, individually on its own behalf and
derivatively on behalf of FAB UNIVERSAL CORPORATION, a Colorado Corporation,

      Plaintiff,

v.

HONGCHENG ZHANG;
JING ZHANG;
CHONG ZHANG;
(one or more of HONGCHENG ZHANG, JING ZHANG, and CHONG ZHANG a/k/a
BINGBIN ZHONG; BINGYANG LIU; FENG YANG; GUANGXIA REN; GUOZHU ZHANG;
HENG LI; HONGWEI XU; JIANCHEN CUI; LIPING SONG; LU DONGXIAO; LU YE;
MENG SHI; SHUBIN LIAO; SHUKUN YANG; SONGSHAN WANG; XIAOPENG YANG;
XINYU ZHANG; YAJUN FAN; YANG SHANG);
JUNHAO INTERNATIONAL INVESTMENT LIMITED, a British Virgin Islands Corporation,
BOHAIHONG INTERNATIONAL INVESTMENT LIMITED, a British Virgin Islands
Corporation,
TENGDA INTERNATIONAL INVESTMENT LIMITED, a British Virgin Islands Corporation,
BEIJING JINGJCAI WUXIAN CULTURAL COMMUNICATIONS CO., LTD, a Hong Kong
Entity,
FAB UNIVERSAL CORPORATION, a Colorado Corporation, and
ISSUER DIRECT CORPORATION, a North Carolina Corporation,

      Defendants.

---

## VERIFIED COMPLAINT AND JURY DEMAND

---

      Plaintiff Liberated Syndication, Inc. ("Libsyn"), a Nevada corporation, individually on its

own behalf and, in the alternative, derivatively on behalf of FAB Universal Corporation

("FAB"), a Colorado corporation, by and through its undersigned counsel, for its Verified

Complaint ("Complaint") against Defendants, alleges as follows:

## I.  <u>Nature of the Action</u>

1.     Libsyn files this action to protect itself and its stockholders from the effects of an intertwined, interwoven, concealed and hidden chain of fraud and other wrongdoing by certain of the defendants (the "Ponzi Scheme Defendants").  While the Ponzi Scheme Defendants' wrongdoing set forth by this Complaint goes back a number of years, Libsyn through its investigation and due diligence only recently has discovered the full scope and extent of it as well as the devastating harm and injury that it is causing to Libsyn and its shareholders.  What Libsyn describes in this Complaint concerning the Ponzi Scheme Defendants' wrongdoing is based upon facts and information it recently obtained.

2.     The history of Libsyn traces back to Wizzard Software Corporation ("Wizzard"), a Colorado corporation, which was founded in 1996 and which later changed its name to FAB Universal Corporation (referred to herein as "FAB").  Wizzard became a publicly traded company in 2001 and was listed on the NASD OTC stock exchange.  Wizzard was uplisted on to the New York Stock Exchange, American in 2008.  One of Wizzard's subsidiaries was WebMayhem, Inc. ("WebMayhem"), which did business under the name Liberated Syndication ("WebMayhem/Libsyn"), and was an early pioneer in podcasting.  WebMayhem/Libsyn has offered podcasting services continually under the name Liberated Syndication.

3.     In 2012, Wizzard was defrauded by the Ponzi Scheme Defendants to enter into a merger agreement (the "Wizzard/DEI Merger") with Digital Entertainment International Ltd. ("DEI"), which was held-out to be a thriving digital media company based in and operating from the People's Republic of China.

4.      As part of the Wizzard/DEI Merger, and as a result of the Ponzi Scheme Defendants' fraud and other wrongdoing, Wizzard issued the Chinese-based Ponzi Scheme Defendants 10,282,611 shares of Wizzard stock worth approximately $30.8 million. Wizzard changed its name from Wizzard to FAB, which was listed on the New York Stock Exchange. WebMayhem/Libsyn remained a subsidiary of FAB.  After the merger, the Ponzi Scheme Defendants controlled approximately 49% of FAB's stock.

5.      Eventually, a massive fraud was uncovered at the Chinese operations of DEI, which caused the stock price of FAB to collapse.  The U.S.-based management team went to the People's Republic of China to investigate and found the business abandoned and that the CEO had been detained by the Chinese authorities.  Later, many of the wrongdoers, including a number of the Ponzi Scheme Defendants, were detained by Chinese authorities, charged with various crimes, and found guilty in China.  Seven Chinese nationals located in the People's Republic of China, including three of the Ponzi Scheme Defendants, eventually were sentenced to prison in Chinese jails.

6.      Due to the fraud in the Chinese operations of DEI, FAB's stock listed on the New York Stock Exchange collapsed from a high of approximately $10 per share down to $.01 per share.  Prior to the collapse of the stock price, the Ponzi Scheme Defendants sold approximately 2.8 million shares of FAB stock.  Testimony during a Chinese criminal proceeding described that the inability to sell additional FAB stock led to a liquidity crisis and collapse of the Ponzi scheme during June through August 2014.

7.      In an effort to salvage value for stockholders, FAB incorporated a new subsidiary Liberated Syndication, Inc, ("Libsyn") and transferred the podcasting subsidiary WebMayhem,

Inc. to Libsyn.  FAB then issued one share of Libsyn's common stock for each share of common stock owned by stockholders of FAB (the "Libsyn Stock Spin-Off").  As a result, each FAB stockholder -- including the Ponzi Scheme Defendants who had obtained their FAB stock as a result of their fraud and wrongdoing -- received one share of Libsyn stock, a Nevada corporation publicly traded on the OTC market under the ticker LSYN, for each share of FAB they held.  As such, the Ponzi Scheme Defendants' fraud and wrongdoing extended to and engulfed Libsyn, with the Ponzi Scheme Defendants, among other things, obtaining the rights to and/or ownership of Libsyn stock as a direct result of their fraud and wrongdoing (the "Wrongful Stock Holdings").

8.      While Libsyn and FAB tried to document and investigate the Ponzi Scheme Defendants' actions, Libsyn did not discover the true nature and extent of the Ponzi Scheme Defendants' conduct until just recently.  On or about October 6, 2020, Libsyn learned about and obtained an English translation of a criminal judgment entered in the People's Republic of China against principal Ponzi Scheme Defendants by Presiding Judge Cheng Jie of the Xiecheng District People's Court, Beijing, China, as a Criminal Judgment of First Instance for Illegal Absorption of Public Savings in Case No. 2016 Jing 0102, dated November 27, 2017 ("Chinese Criminal Judgment").  A certified English Translation of the Chinese Criminal Judgment is attached hereto as Exhibit 1.  The Chinese Criminal Judgment described, among other things, the wrongdoing in which a number of the Ponzi Scheme Defendants had engaged.

9.      Libsyn has been and continues to be harmed and damaged by the Ponzi Scheme Defendants' actions.

10.     Libsyn has determined by examining historical and current shareholder records that the Wrongful Stockholdings are substantial:  The Wrongful Stockholdings constitute approximately 27.0% of Libsyn's outstanding stock as of November 16, 2020.  At least 7,177,350 of Libsyn's 26,588,220 shares trace directly back to stock issued in the original Wizzard/DEI Merger.

11.     These Wrongful Stockholding are controlled by the by Ponzi Scheme Defendant Hongcheng Zhang through a web of aliases and fictitious names and have been found by the Chinese courts to be shell British Virgin Island companies including JunHao International Investment Limited, BoHaiHong International Investment Limited, and TengDa International Investment Limited, each of which is purportedly located in the British Virgin Islands (the "BVI Entities").  All of these BVI Entities identify Ponzi Scheme Defendant Hongcheng Zhang as the contact person.  Not coincidentally, the BVI Entities began failing to pay their registration fees beginning in approximately 2017, which Libsyn has now learned is when the Chinese Criminal Court issued the Chinese Criminal Judgment sentencing Defendant Hongcheng Zhang to jail for his crimes in the People's Republic of China.  There has not been activity of any sort, trading or voting, of the Wrongful Stockholding shares registered to the Ponzi Scheme Defendants and the BVI Entities since the Libsyn shares were issued on August 1, 2016.

12.     The Wrongful Stockholdings were obtained by the Ponzi Scheme Defendants through their fraud and wrongdoing.  This fraud and wrongdoing has been proven in and adjudicated by the Chinese Criminal Court as described by the Chinese Criminal Judgment.  Further, the Ponzi Scheme Defendants, though their fraud and other wrongdoing, have continually maintained a more than 20% interest in Libsyn that has not been disclosed on

Schedule 13D or 13G as a greater than 5% holder in Libsyn.  As such, the Ponzi Scheme Defendants have violated by Williams Act by failing to make the required Schedule 13D United States Securities and Exchange Commission disclosures, thereby misleading Libsyn, its other stockholders and potential investors in Libsyn stock.

13.     The Wrongful Stockholdings make it difficult for Libsyn to move forward with corporate actions requiring stockholder approval that otherwise would be available to it.  They threaten Libsyn's business relationships with critical business partners including Apple, Google, and Spotify, have made it difficult to obtain accountants and auditors, and make the path to obtaining a listing on national exchange like the NYSE or NASDAQ more difficult.  The Ponzi Scheme Defendants have effectuated a "creeping takeover" of Libsyn, to the detriment and harm to Libsyn, and which effectively has blocked Libsyn's ability to move forward with repurchasing its shares in the marketplace, causing further injury to it.  And, the Wrongful Stockholdings negatively impact Libsyn's reputation and goodwill, including with innocent Libsyn stockholders and their rightful ownership in the business.

14.     Libsyn has taken several corporate actions available to it under law to address the wrongdoing and harm caused by the Ponzi Scheme Defendants and their Wrongful Stockholdings.  Among other things, (a) in 2019 Libsyn and its Board of Directors conducted an on-the-ground investigation in the People's Republic of China using highly qualified private investigators to attempt to locate the registered holders with Wrongful Stockholdings, which investigation concluded that most of the names and addresses on the stockholder registry for the Wrongful Stockholdings were fictitious, and merely aliases and front names for the Ponzi Scheme Defendants; (b) on October 23, 2020, Libsyn instructed its transfer agent to place a

precautionary hold on the Wrongful Stockholdings, which instructions reportedly are only currently valid for three-days following any request to the transfer agent to transfer stock; (c) on November 25, 2020, Libsyn's Board of Directors has passed a Resolution (Exhibit 2 hereto), which, among other things, (i) imposes a complete restriction on the voting, trading, assigning, and transferring of any and all of the Wrongful Stockholdings on the transfer records of Libsyn until resolution of the claims in this litigation or otherwise as approved by Libsyn in writing and (ii) nullifies and voids any attempted voting, trading, assigning, and transferring of the Wrongful Stockholdings in violation of those restrictions; (d) Libsyn is sending notice to those persons and entities purportedly holding and/or having an interest in the Wrongful Stockholdings of the Resolution and the restrictions the Libsyn Board has imposed on the Wrongful Stockholdings; and, (e) Libsyn is giving notice of the Resolution and the restrictions the Libsyn Board has imposed on the Wrongful Stockholdings to Libsyn's transfer agent, along with proof of notification sent to the holders of record of the Wrongful Stockholdings, and shall request such transfer agent immediately impose such restriction on voting, trading, assigning, and transferring in addition to the stop transfer order currently in place with the transfer agent.

15.     Critically, Libsyn recently has learned that a number of the Ponzi Scheme Defendants have been, or soon will be released from jails in the People's Republic of China and will again be able to access shares of the Wrongful Stockholdings.  As such, Libsyn requests that the Court enter declaratory relief and an injunction to protect Libsyn and its legitimate stockholders and to prevent additional damage to Libsyn beyond what the Wrongful Stockholdings already has caused.

## II.  Parties

### A.     Plaintiffs

16.     Libsyn is a Nevada corporation with its principal place of business in Pittsburgh, Pennsylvania, and with operations and business activity in Colorado, among other places. Libsyn files this Complaint individually on its own behalf and, in the alternative, derivatively on behalf of its former parent FAB, which is a Colorado corporation.  Throughout late 2019 and early 2020, and prior to Libsyn obtaining the Chinese Criminal Judgment, FAB was in the process of being shut down and it currently has no operations or resources.  The conduct and actions alleged in this Complaint were directed at and/or arose in connection in Colorado.  Libsyn has shareholders residing in Colorado.

### B.     Ponzi Scheme Defendants

17.     Hongcheng Zhang, upon information and belief, is a citizen of the People's Republic of China.  Upon information and belief, Hongcheng Zhang purports to own and/or have a direct or indirect interest in all of the Wrongful Stockholdings.

18.     Defendant Jing Zhang, upon information and belief, is a citizen of the People's Republic of China and is the niece of Hongcheng Zhang.  Upon information and belief, Jing Zhang purports to own and/or have a direct or indirect interest in a portion of the Wrongful Stockholdings.

19.     Chong Zhang, upon information and belief, is a citizen of the People's Republic of China.  Upon information and belief, Chong Zhang purports to own and/or have a direct or indirect interest in a portion of the Wrongful Stockholdings.

20.     Based upon its investigation to date, including using both highly qualified local counsel with full power of attorney and highly qualified private investigators in the People's Republic of China, Libsyn has concluded, upon information and belief, that the Ponzi Scheme Defendants listed their Wrongful Stockholding under several aliases and fictitious names.  These include the following:  Bingbin Zhong; Bingyang Liu; Feng Yang; Guangxia Ren; Guozhu Zhang; Heng Li; Hongwei Xu; Jianchen Cui; Liping Song; Lu Dongxiao; Lu Ye; Meng Shi; Shubin Liao; Shukun Yang; Songshan Wang; Xiaopeng Yang; Xinyu Zhang; Yajun Fan; and Yang Shang (the "Alias/Fictitious Names").  Libsyn's conclusions are consistent with the testimony referenced by the Chinese Criminal Judgment.

21.     The parties listed in Paragraphs 17 through 20 above, both under their given names and their Alias/Fictitious Names, are collectively referred to herein as the "Ponzi Scheme Defendants."

**C.     The BVI Defendants**

22.     JunHao International Investment Limited, upon information and belief, is a British Virgin Islands corporation with its principal place of business in the British Virgin Islands.  Upon information and belief, one or more of the Ponzi Scheme Defendants formed and organized JunHao International Investment Limited to hold the Wrongful Stockholdings.

23.     BoHaiHong International Investment Limited upon information and belief, is a British Virgin Islands corporation with its principal place of business in the British Virgin Islands.  Upon information and belief, one or more of the Ponzi Scheme Defendants formed and organized BoHaiHong International Investment Limited to hold the Wrongful Stockholdings.

24.    TengDa International Investment Limited, upon information and belief, is a British Virgin Islands corporation with its principal place of business in the British Virgin Islands.  Upon information and belief, one or more of the Ponzi Scheme Defendants formed and organized TengDa International Investment Limited to hold the Wrongful Stockholdings.

25.    Beijing Jingjcai Wuxian Cultural Communication Co., Ltd, upon information and belief, is a Hong Kong entity with its principal place of business in Hong Kong.  Upon information and belief, one or more of the Ponzi Scheme Defendants formed and organized Beijing Jingjcai Wuxian Cultural Communication Co., Ltd to hold interests in JunHao International Investment Limited, BoHaiHong International Investment Limited, and TengDa International Investment Limited.

26.    JunHao International Investment Limited, BoHaiHong International Investment Limited, TengDa International Investment Limited, and Beijing Jingjcai Wuxian Cultural Communication Co., Ltd are collectively referred to herein as the ("BVI Entities").

**D.    The Additional Defendants**

27.    Defendant FAB Universal Corporation ("FAB") is a Colorado corporation.

28.    Defendant Issuer Direct Corporation ("Transfer Agent" or "IDC") is a Delaware corporation with its principal place of business in Raleigh, North Carolina.  IDC is the transfer agent for Libsyn and FAB, among other companies.

29.    Libsyn names FAB and IDC as defendants for purposes of its claim for Declaratory Relief as well as for the injunctive relief it seeks.

### III.  Jurisdiction and Venue

30.     This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 78aa and 28

U.S.C. § 1331.  All other claims in this action arise from the same transaction or occurrence,

such that this Court has supplemental jurisdiction under 28 U.S.C. § 1367(a).

31.     Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b).

32.     All conditions precedent for Libsyn to maintain this action, in the alternative, as a

derivative action on behalf of FAB have been satisfied.  Libsyn has requested that FAB join

Libsyn as a Plaintiff and initiate suit and, as of the filing of this Complaint, FAB has, at this time,

declined to take action.

### IV.  General Allegations

33.     Libsyn obtained an English translation of the Chinese Criminal Judgment on

October 6, 2020.  Since that time, and as part of its investigation, Libsyn has managed to piece-

together the existence of the following set of events.  To date, Libsyn continues to uncover the

existence of addition wrongdoing.

#### A.     The Ponzi Scheme Defendants' Transactions

34.     In 2012, Wizzard was defrauded and wrongfully induced by the Ponzi Scheme

Defendants to enter into the Wizzard/DEI Merger with China-based DEI and, thereafter, the

merged Wizzard entity changed its name to FAB.  DEI's founder, Chief Executive Officer, and

Ponzi Scheme Defendant Hongchang Zhang, became FAB's Chairman and continued from the People's Republic of China to lead the management of FAB's China based operations.

### 1.      The Fraudulent Kiosk Ponzi Scheme

35.      The Ponzi Scheme Defendants (some of whom are referred to in the Chinese Criminal Judgment as the "FAB Jingcai Group") operated a number of different Chinese subsidiaries in an elaborate illegal Ponzi scheme.  DEI was one of the entities the Ponzi Scheme Defendants illegally operated.  (*See* Ex. 1, Criminal Judgment p 6).

36.      The Ponzi Scheme Defendants developed an illegal scheme to merge China-based DEI with a publicly-traded US-based company to further their Ponzi scheme.  After the Wizzard/DEI merger, the Ponzi Scheme Defendants provided fraudulent stock certificates in lieu of cash to its early Ponzi scheme investors/victims as an effort to perpetuate the Ponzi scheme and to hide the fact that it had insufficient funds to continue paying out to its guaranteed returns to investors. (*Id.* at p. 15).

37.      In doing so, the Ponzi Scheme Defendants prepared, among other things, a "pitch deck" and wrongfully promoted DEI's business to potential investors.  The pitch deck presented a thriving business, when in fact, the business was a house of cards. The pitch deck is attached hereto as Exhibit 3.

38.      The Ponzi Scheme Defendants made several fraudulent misrepresentations and omissions in the pitch deck and in promoting DEI's business to Wizzard and others, including, but not limited to:

(a)      [DEI] is the largest provider of copyrighted digital cultural and entertainment products in China;

(b)      [DEI] has developed its own proprietary kiosks network that enable the consumers to stream a wide range of licensed music, films, TV episodes to their mobile devices or memory cards;

(c)      DEI had more than 1,000 franchises by March 2011;

(d)      DEI had more than 3,000 installed Kiosks by March 2011;

(e)      "Our innovative kiosk network has been proven to be an effective revenue generating channel and media platform";

(f)      The DEI kiosks were "Proven to be a scalable and successful business model";

(g)      The DEI kiosks "Offer on-site instant download services of licensed digital contents such as music, films, games, mobile phone software and education materials;" and

(h)      "In total, the revenue from [DEI] kiosks network is expected to reach $88 mil. in 2015 with $ 68 mil. of gross profit."

39.      Further, the Chinese Criminal Judgment found that Ponzi Scheme Defendant Hongcheng and others "in their speeches to employees and promotion of the investment project to investors, exaggerated the profit prospect of the "5C Series Terminal" project and the expected return on the shares of [DEI] after its overseas listing and induced the employees themselves and others to invest." (Ex. 1. at p. 13).

40.      In fact, DEI materials were not appropriately licensed.  The licensing agreements and payments were fraudulent.  Inventory in DEI stores, and on kiosks, was pirated.  Purported

licensing payments amounting to tens of millions of dollars were later proven to have been from funds embezzled by the Ponzi Scheme Defendants.

41.     DEI never had anywhere near the number of kiosks the Ponzi Scheme Defendants represented to Wizzard to induce the Wizzard/DEI Merger.

42.     For example, Witness Qiao testified: "By the end of September 2012, only three "Screen Shopping Terminals" had been installed and placed, and there has been no further production since then. But at the end of the same year, when he attended the annual meeting of the Group, he learned that the sales revenue of the Marketing Center from the "Screen Shopping Terminals" has reached millions of yuan." (*Id.* at p. 5).

### 2.     The Wizzard/DEI Merger

43.     The Ponzi Scheme Defendants' defrauded Wizzard to enter into the Wizzard/DEI Merger.  As a result of the Ponzi Scheme Defendants' fraud and other wrongdoing, Wizzard issued the Ponzi Scheme Defendants 10,282,611 shares of Wizzard stock.  Upon information and belief, Wizzard would not have issued such shares absent the Ponzi Scheme Defendants' fraud and other wrongdoing directed at Wizzard.  Wizzard changed its name from Wizzard to FAB, which was listed on the New York Stock Exchange and Webmayhem/Libsyn remained a subsidiary of FAB.

### 3.     The Libsyn Stock Spin-Off

44.     With the China-based operations abandoned, Webmayem/Libsyn continued to thrive with the growth in podcasting. On September 30, 2015, FAB declared a stock dividend,  of one (1) share of common stock of Libsyn to each owner of one (1) share of FAB common stock.

The dividend was payable on August 1, 2016 to each of FAB's stockholders of record on the record date of July 20, 2016.

45.     On August 1, 2016, the Libsyn stock dividend was distributed.

46.     As a result, despite the Ponzi Scheme Defendants being convicted of fraud in the People's Republic of China and sentenced to jail, the Ponzi Scheme Defendants' worthless holdings in China-based DEI were converted into the Wrongful Stockholdings in Libsyn, a U.S.-based publicly traded podcasting company with real value.  As such, the Ponzi Scheme Defendants' fraud and wrongdoing was perpetrated on Libsyn, and directly and negatively impacted it, by Libsyn now having the same number of Wrongful Stockholdings outstanding.

**4.     The Ponzi Scheme Defendants Hid the Wrongful Stockholdings in Furtherance of the Ponzi Scheme**

47.     On information and belief, the Ponzi Scheme Defendants listed their Wrongful Stockholding under aliases and fictitious names.  These include the following:  Zhong Bingbin; Bingyang Liu; Feng Yang; Guangxia Ren; Guozhu Zhang; Heng Li; Hongwei Xu; Jianchen Cui; Liping Song; Lu Dongxiao; Lu Ye; Meng Shi; Shubin Liao; Shukun Yang; Songshan Wang; Xiaopeng Yang; Xinyu Yang; Yajun Fan; and Yang Shang.

48.     The Ponzi Scheme Defendants also formed three of the BVI Entities to hold the Wrongful Stockholdings: JungHao International Investment Limited, BoHaiHong International Investment Limited, and TengDa International Investment Limited.  (*See* Ex. 1, Criminal Judgment pp. 7, 10).

49.     Ponzi Scheme Defendant Hongcheng Zhang is listed as a contact person for all three BVI Entities.

50.     These three BVI Entities stopped paying their registration fees in 2017, approximately the same time Ponzi Scheme Defendant Hongcheng Zhang was imprisoned in the People's Republic of China, and all of his financial assets were seized, further demonstrating a connection between the BVI Entities and Ponzi Scheme Defendant Hongcheng Zhang.

51.     On information and belief, Ponzi Scheme Defendant Hongcheng Zhang put the Wrongful Stockholdings he owned and controlled in the BVI Entities to evade disclosures under SEC Schedule 13D.

52.     A Hong Kong entity, Beijing Jingjcai Wuxian Cultural Communication Co., Ltd, was set up to hold an interest in the BVI Entities.  (*Id.* at p. 11).

**B.      The Chinese Criminal Judgment**

53.     On November 27, 2017 Presiding Judge Cheng Jie of the Xiecheng District People's Court, Beijing, China, entered the Chinese Criminal Judgment.

54.     Following trial, the Chinese Criminal Court determined that:

(a)     The entities controlled by Ponzi Scheme Defendant Hongcheng Zhang, including DEI, violated the national financial management system by pooling huge amounts of public deposits in a disguised manner through several enterprises controlled and managed by it, in the form of legitimate business operations (Exhibit 1 at p.21).

(b)     Ponzi Scheme Defendant Hongcheng Zhang, and the other Chinese Criminal Defendants, are the heads and persons directly responsible for the disguised act of pooling public deposits by the entities they control, including DEI, which constitutes the crime of illegally pooling public deposits and is a joint crime, and shall be punished according to the law.  (*Id.*)

(c)     In the course of business activities, Ponzi Scheme Defendant Hongcheng Zhang and the entities he controlled, including DEI, disseminated information on pooling of funds to the public by various means, committed acts of pooling of funds by recruiting social workers into the enterprises managed and controlled by it for the purpose of pooling funds, and induced the employees with sales commissions to disseminate such information on pooling of funds to the

public again, resulting in investors ultimately incurring significant financial losses.  (*Id.*).

55.  The Chinese Criminal Court entered judgments and imposed prison sentences and fines against the seven Chinese Criminal Defendants.  This included judgments, prison sentences, and fines againstPonzi Scheme Defendants Hongcheng Zhang and Jing Zhang, as follows:

(a)  Ponzi Scheme Defendant and Chinese Criminal Defendant Hongcheng Zang (male, born May 30, 1968) was found guilty of the Crime of Illegally Absorption of Public Savings, and the Crime of Obtaining Loans by Fraud.  He was sentenced to nine years in prison, ending on October 4, 2023.  He was also ordered to pay fines.  (*Id.*)

(b)  Ponzi Scheme Defendant and Chinese Criminal Defendant Jing Zhan (female, born October 28, 1978) was found guilty of the Crime of Illegal Absorption of Public Savings.  She was sentenced to five years and six months in prison, to end on May 22, 2023.  She was also ordered to pay a fine. (*Id.*)

56.  The Chinese Criminal Court assessed fines against the seven Chinese Criminal Defendants totaling BMB 1,240,00 yuan, which is approximately $1.7 million.  (*Id.*)

57.  The Chinese Criminal Court also ordered the Chinese Criminal Defendants "to refund and make compensation for the economic losses caused to the investors."  (*Id.* p. 24).  The Indictment by the government alleged the fraud on investors was more than RMB 366 million yuan (roughly $55.6 million).  It is believed that the vast majority of these economic losses related to fraud associated with the kiosk scam and DEI transaction.

58.  The first time that Libsyn obtained an English translation of the Chinese Criminal Judgment, and learned of the contents of it, was on October 6, 2020.

**C.**     **The Imminent, Impending, and Irreparable Harm to Libsyn and Its Stockholders**

59.     Libsyn has been and continues to be harmed and damaged, including its legitimate stockholdings being diluted, by the very existence of the Wrongful Stockholdings.

**1.     Dilution of Value of Libsyn, Its Stock, and Its Shareholders**

60.     As of November 16, 2020, Libsyn's total number of outstanding shares were 26,588,220.  Of this, the Wrongful Stockholdings remaining totaled 7,177,350 shares, or approximately 27.0%.

61.     As of November 16, 2020, Libsyn's stock closed at $3.65 per share.  If the Wrongful Stockholdings declared null and void, as they should be, Libsyn and its innocent shareholders would no longer be diluted by the 7,177,350 shares of Wrongful Stockholdings. The number of outstanding shares would be reduced from 26,588,220 to 19,410,870.  If the market capitalization (outstanding shares X stock price) stayed constant, the implicit stock price would increase to approximately $5.00 per share reflecting a stock price increase of approximately 37.0%.

| | | | Adjusted for Cancellation |
| --- | --- | --- | --- |
| | Current Shares | Wrongful Stockholdings | of Wrongful Stockholdings |
| Shares | 26,588,220 | 7,177,350 | 19,410,870 |
| Price | $        3.65 | | $        5.00 |
| Market Capitilization | $   97,047,003 | | $   97,047,003 |

62.     Further, Libsyn continuously receives negative comments about the existence of the Wrongful Stockholding and its past association with the Ponzi Scheme Defendants.  As such, the stock price likely would exceed $5.00 once the issues concerning the Wrongful Stockholdings are resolved.

2.      **Libsyn's Corporate Governance and Actions Have Been Stymied**

63.     The Nevada corporate code requires that Libsyn obtain approval of a majority of the stock outstanding for Libsyn to take certain actions.  These include, as examples only:

(a)     Approval of a merger or share exchange.  Libsyn could not enter into any strategic combination with another entity without this approval.

(b)     Approval of Amendment to Articles of Incorporation.  Libsyn could not amend the articles to elect into the Nevada anti-takeover statutes, or increase its authorized shares in order to issue additional shares to raise capital when the current authorized shares are exhausted.  In addition, insufficient authorized shares could prevent Libsyn from making acquisitions for stock and compensating employees and service providers with equity.

64.     Further, one of Libsyn's current business strategies is to explore the acquisition of additional podcasting companies as well as other strategic alternatives to continue to remain competitive.  Podcast hosting is a highly competitive industry facing competition from large podcast hosting companies such as Spotify and iHeart Radio.  Without growth, Libsyn risks failure.

65.     Many of the steps need to grow, such as mergers and acquisitions, and amending the Article of Incorporation, including authorizing additional shares to raise capital, require majority stockholder approval, which is impeded by the existence of the Wrongful Stockholdings.

66.     As a public company, the market and industry in which Libsyn operates and participates require that Libsyn be able to use its stock as a currency to acquire other companies and competitive service providers.  For example, entrepreneurs, with whom Libsyn has explored engaging, have demanded that a portion of their compensation be in Libsyn stock.   Libsyn is reticent to use its stock as currency when the shares outstanding do not currently reflect the stock

owned solely by rightful holders and cause its stock to be significantly undervalued.  The existence of the Wrongful Stockholdings stymie Libsyn's ability to conduct its business.

67.     The existence of the Wrongful Stockholdings make it almost impossible, as a practical matter, for Libsyn to obtain a favorable vote of a majority of the stock outstanding.  Libsyn's stockholders are widespread with small holdings.  For example, there are over 3,200 beneficial owners of the stock.  There are very few large institutional investors.  As a result, it is very difficult to obtain enough votes to move forward with corporate actions needing the majority of shares for approval. As a consequence, any action that Nevada rules require a majority vote, now effectively require a supermajority (70% +) of active stockholders.  This allows a small minority of stockholders the ability to block actions requiring a majority vote.

### 3.     Williams Act Violations

68.     The Wrongful Stockholdings held by the Ponzi Scheme Defendants through Alias/Fictitious Names and/or the BVI Entities exceed the 5% requirement for SEC Schedule 13D filings.

69.     The Ponzi Scheme Defendants, though their fraud and other wrongdoing, and their use of fictitious names and control of the BVI Entities, have continually maintained a more than 20% interest in Libsyn, which has not been disclosed on Schedule 13D or 13G as a greater than 5% holder in Libsyn.

70.     The U.S. Code of Federal Regulations, 17 C.F.R. § 240.13d-1, and 15 U.S.C. § 78m governs the filing of Schedules 13D and 13G.  Section 240.13d-1 of 17 C.F.R. provides, in pertinent part, that

§ 240.13d-1 Filing of Schedules 13D and 13G.

(a) Any person who, after acquiring directly or indirectly the beneficial ownership of any equity security of a class which is specified in paragraph (i) of this section, is directly or indirectly the beneficial owner of more than five percent of the class shall, within 10 days after the acquisition, file with the Commission, a statement containing the information required by Schedule 13D (§ 240.13d-101).

* * *

(e)

* * *

(2) From the time the person has acquired or holds the securities with a purpose or effect of changing or influencing control of the issuer, or in connection with or as a participant in any transaction having that purpose or effect until the expiration of the tenth day from the date of the filing of the Schedule 13D (§ 240.13d-101) pursuant to this section, that person shall not:

(i) Vote or direct the voting of the securities described therein; or

(ii) Acquire an additional beneficial ownership interest in any equity securities of the issuer of the securities, nor of any person controlling the issuer.

*See also* 15 U.S.C. § 78m.

71.   The Ponzi Scheme Defendants' failure to make the required Schedule 13D disclosure is misleading to Libsyn, its stockholders, and potential investors in Libsyn.  While this is a violation by one or more of the Ponzi Scheme Defendants, and not by Libsyn, it harms Libsyn's reputation and depresses its stock price.

72.   Consequently, and under the circumstances, the Ponzi Scheme Defendants should be enjoined from voting or directing the vote of the Wrongful Stockholdings or acquiring an additional beneficial ownership interest in any equity securities of Libsyn, nor of any person controlling Libsyn until they cure the Williams Act violations.

**4.**      **The Ponzi Scheme Defendants' Fraud and Other Wrongful Conduct are Effectuating a "Creeping Takeover" of Libsyn**

73.      By engaging in, hiding, and covering-up their fraud and other wrongful conduct with respect to the Wrongful Stockholdings, including, but not limited to, failing to make the required Schedule 13D disclosures that they and through their use of fictitious names and control of the BVI Entities, have continually maintained a more than 20% interest in Libsyn, the Ponzi Scheme Defendants are wrongfully effectuating a "creeping takeover" of Libsyn.

74.      Specifically, and as an example only, as of January 1, 2020 the Wrongful Stockholdings constituted approximately 24.5% of Libsyn's outstanding stock with commensurate voting power.  Recently, Libsyn has reduced the share count through the repurchase of stock. Libsyn has reduced the number of shares of Libsyn stock outstanding in the marketplace by more than 8% during the third quarter of 2020 alone.  This resulted in the Wrongful Stockholdings presently constituting approximately 27% of Libsyn's outstanding stock with commensurate voting power.

75.      Consequently, as a direct result, of their fraud, other wrongdoing, and failures to make the required Schedule 13D disclosures, the Ponzi Scheme Defendants have increased their percentage ownership of Libsyn, are effectuating a creeping takeover of Libsyn, and are concentrating voting power in the Ponzi Scheme Defendants' hands, to the detriment and harm of Libsyn.

76.      Under the circumstances, and in light of the existence of the Wrongful Stockholdings, Libsyn is unable to move forward with further buybacks of its outstanding stock. As such, the Ponzi Scheme Defendants and their Wrongful Stockholding effectively have wrongfully blocked Libsyn's ability to do so, to the detriment and harm of Libsyn.

     5.    **Additional Harm to Libsyn**

77.    The continued ownership of the large block of stock represented by the Wrongful

Stockholdings, obtained through fraud and other wrongdoing, is damaging Libsyn's reputation

with customers and potential customers as well as impairing it's goodwill with existing

customers. The uncertainty concerning the Wrongful Stockholdings, and the Ponzi Scheme

Defendants' purported interests in it, is devastating to Libsyn.

78.    Further, Libsyn has now learned that a number of the Chinese Criminal

Defendants have either recently been released from the Chinese Jails or will soon be released.

79.    Specifically, Ponzi Scheme Defendant Hongcheng Zhang is scheduled to be

released in October 2023, Ponzi Scheme Defendant Jing Zhang is scheduled to be released in

November 2023.  Defendant Shunfia Qian was scheduled to be released in June 2020, Defendant

Jianguo Chang was scheduled to be released in July 2020, Defendant Xia Chen was scheduled to

be released in October 2020, and Defendants Bin Zhang and Lingling Wang were scheduled to

be released on November 13, 2020.

80.    The Chinese Criminal Defendants had significant fines and restitution orders

entered against them.  There is a significant risk the Ponzi Scheme Defendants will attempt to

sell, transfer, or otherwise liquidate the shares of the Wrongful Stockholdings they obtained by

fraud and other wrongdoing in order to satisfy these orders and fines.

81.    Libsyn has now learned that, despite their rigorous efforts, the Chinese authorities

were unable to trace tens of millions of dollars of missing funds.  Those funds are likely still in

control of the Ponzi Scheme Defendants.  Upon information and belief, those funds likely were

effectively laundered, potentially to offshore locations.  There is also therefore significant risk

that the Chinese Criminal Defendants have access to ill-gotten funds that could be used in the United States to pursue actions to gain control of Libsyn using the Wrongful Stockholdings, or to bring their BVI entities back into good standing and sell their BVI controlled Wrongful Stockholdings, or take other actions that would be harmful to Libsyn.

82.     Libsyn and its relationship with its stockholders and the marketplace are likely to suffer imminent harm due to attempts to transfer, sell and/or vote the Wrongful Stockholdings.

83.     Such efforts would decrease the value of Libsyn and its relationships with its stockholders and the marketplace. Further, allowing these fraudulently obtained shares to remain outstanding harms Libsyn as an ongoing operation.

**D.     Libsyn's Efforts to Protect Itself and its Stockholders**

84.     Libsyn has undertaken such corporate measures and actions as are appropriate under the law to protect itself and prevent further harm by the Ponzi Scheme Defendants and their Wrongful Stockholdings.

85.     Libsyn conducted an investigation in the People's Republic of China to attempt to locate the stock certificates for, or the registered holders of, the Wrongful Stockholdings, and/or the purported interests giving rise to them.  The investigation concluded that many of the names and or addresses on the stockholder registry were fictitious, and as such, no stockholders could be found.

86.     Libsyn attempted to communicate with the BVI Entities without success.

87.      Public records indicate the BVI Entities have not paid their registration fees since approximately 2017—coinciding with Hongcheng Zhang's imprisonment.

88.     In August of 2020, Libsyn, appointed a new CFO, Richard Heyse, who had experience in the People's Republic of China from previous roles, including several years of working there. In early September of 2020, Heyse took steps to obtain the Chinese Criminal Judgment. Heyse obtained the documents, and had them translated on October 6, 2020.

89.     On October 23, 2020, Libsyn instructed its Transfer Agent to place a precautionary hold on the affected stock.

90.     Further, pursuant to applicable law, Libsyn's Board has passed a Resolution, a copy of which is attached as Exhibit 2 hereto which provides:

- "The Board hereby imposes a complete restriction on the voting, trading, assigning, and transferring of any and all of the Wrongful Stock Holdings on the transfer records of the Company until resolution of the Claims in the litigation as authorized above or otherwise as approved by the Company in writing."

- "Any attempted voting, trading, assigning, and transferring of the Wrongful Stock Holdings in violation of the restrictions hereby imposed shall be null and void."

- "The Company shall give notice of this restriction on voting, trading, assigning, and transferring to the holders of the Wrongful Stock Holdings at the current address of such holders as reflected on the stock records of the Company."

- "The Company shall give notice of this Restriction Plan to the transfer agent of the Company, along with proof of notification sent to the holders of record of the Wrongful Stock Holdings and shall request such transfer agent immediately impose such restriction on voting, trading, assigning, and transferring in addition to the stop transfer order currently in place with the transfer agent."

91.     Libsyn is moving forward with action on this Resolution.

### V.  Claims for Relief

### First Claim for Relief
### (Securities Fraud – Violation of Colorado Securities Act)
### (Direct Claim by Libsyn against Ponzi Scheme Defendants and the BVI Entities)

92.     Plaintiff Libsyn incorporates by reference each of its allegations herein.

93.     The conduct of the Ponzi Scheme Defendants and the BVI Entities violated the

Colorado Securities Act in that in connection with the offer, sale, or purchase of securities in

Colorado, the Ponzi Scheme Defendants and the BVI Entities directly or indirectly:

        a.     employed a device, scheme or artifice to defraud;

        b.     made written and oral untrue statements of material fact or omitted to state
material facts necessary to make the statements made, in light of the circumstances under
which they were made, not misleading; or

        c.     engaged in acts, practices or courses of business which operated and
would operate as a fraud and deceit on investors

all in violation of C.R.S. § 11-51-501(1).  The Ponzi Scheme Defendants and the BVI Entities

acted knowingly, recklessly or with intent to defraud in purchasing and/or selling securities in

Libsyn.

94.     As a result of their conduct in violation of C.R.S. § 11-51-501(1), the Ponzi

Scheme Defendants and the BVI Entities are liable to Libsyn for such legal and equitable relief

as the Court deems appropriate, including rescission, damages, interest, costs, and reasonable

attorneys' fees.

### Second Claim for Relief
### (Fraudulent Concealment or Nondisclosure)
### (Direct Claim by Libsyn against Ponzi Scheme Defendants and the BVI Entities)

95.     Plaintiff Libsyn incorporates by reference each of its allegations herein.

96.     The Ponzi Scheme Defendants and the BVI Entities knowingly concealed or failed to disclose a material, existing fact that in equity and good conscience they should have disclosed and that they had a duty to disclose.

97.     Libsyn was ignorant of the fact being concealed or not disclosed.

98.     The Ponzi Scheme Defendants and the BVI Entities intended that Libsyn act on the concealed or undisclosed fact.

99.     Libsyn acted on the concealed or undisclosed fact and incurred damages as a result.

100.    As a result of their conduct, the Ponzi Scheme Defendants and the BVI Entities are liable to Libsyn for such legal and equitable relief as the Court deems appropriate, including rescission, damages, interest, costs, and reasonable attorneys' fees.

**Third Claim for Relief**
**(Fraudulent Representation)**
**(Direct Claim by Libsyn against Ponzi Scheme Defendants and the BVI Entities)**

101.    Plaintiff Libsyn incorporates by reference each of its allegations herein.

102.    The Ponzi Scheme Defendants and the BVI Entities made a false representation of material fact, knowing the representation to be false.

103.    The Ponzi Scheme Defendants and the BVI Entities knew that Libsyn was ignorant of the falsity of the representation.

104.    The Ponzi Scheme Defendants and the BVI Entities made the representation intending that Libsyn rely upon it.

105.    Libsyn's reliance on the false representation resulted in damage to Libsyn.

106.    As a result of their conduct, the Ponzi Scheme Defendants and the BVI Entities are liable to Libsyn for such legal and equitable relief as the Court deems appropriate, including rescission, damages, interest, costs, and reasonable attorneys' fees.

**Fourth Claim for Relief**
**(Constructive Trust)**
**(Direct Claim by Libsyn against Ponzi Scheme Defendants and the BVI Entities)**

107.    Plaintiff Libsyn incorporates by reference each of its allegations herein.

108.    As a result of the wrongdoing as set forth herein, the Ponzi Scheme Defendants and the BVI Entities are holding Libsyn stock, a claim to Libsyn stock, and/or the proceeds and benefits to Libsyn stock, with specific knowledge of the duties and obligations they owe to Libsyn.

109.    Under these circumstances, the Ponzi Scheme Defendants and the BVI Entities must retain and may not disburse Libsyn stock, a claim to Libsyn stock, and/or the proceeds and benefits to Libsyn stock in good conscience.

110.    Libsyn is entitled to the imposition of a constructive trust upon the Libsyn stock, a claim to Libsyn stock, and/or the proceeds and benefits to Libsyn stock, converting the Ponzi Scheme Defendants and the BVI Entities into a trustee for the benefit of Libsyn.

**Fifth Claim for Relief**
**(Violation of Williams Act (including 15 U.S.C. § 78m and 17 C.F.R. § 240.13d-1))**
**(Direct Claim by Libsyn against Ponzi Scheme Defendants and the BVI Entities)**

111.    Plaintiff Libsyn incorporates by reference each of its allegations herein.

112.    The conduct of the Ponzi Scheme Defendants and the BVI Entities described herein has caused and is causing substantial and irreparable injury to Libsyn, for which Libsyn

has no adequate remedy at law, and will continue to cause such injury unless this Court enjoins their wrongful conduct.

113.    As a result of this conduct, Libsyn is entitled to injunctive relief, as described in the Demand for Relief, preventing the wrongful conduct of the Ponzi Scheme Defendants and the BVI Entities, including but not limited to, barring them, their agents, employees, partners, or others acting in concert with them, from voting or directing the voting of the Wrongful Stockholdings or acquiring an additional beneficial ownership interest in any equity securities of Libsyn, nor of any person controlling Libsyn.

### Sixth Claim for Relief
**(Declaratory Relief)**
**(Direct Claim by Libsyn against All Defendants)**

114.    Plaintiff Libsyn incorporates by reference each of its allegations herein.

115.    Libsyn is the lawful issuer of Libsyn stock.

116.    The circumstances described herein with respect to Libsyn stock, a claim to Libsyn stock, and/or the proceeds and benefits to Libsyn stock claimed by the Ponzi Scheme Defendants and the BVI Entities constitute failure of consent, impossibility, failure of condition, failure of consideration, and/or fraud, among other things.

117.    As a direct and proximate result of these circumstances, Libsyn is entitled to a declaration, pursuant to F.R.C.P. 57 and 28 U.S.C. § 2201, that the Libsyn stock, a claim to Libsyn stock, and/or the proceeds and benefits to Libsyn stock claimed by the Ponzi Scheme Defendants and BVI Entities is null and void, and is of no force and effect, as well as judgment rescinding any transaction by which the Ponzi Scheme Defendants and BVI Entities acquired

Libsyn stock, a claim to Libsyn stock, and/or the proceeds and benefits to Libsyn stock and rescissionary damages.

<u>**Seventh Claim for Relief (In the Alternative)**</u>
**(Securities Fraud – Violation of Colorado Securities Act)**
**(Derivative Claim by Libsyn on behalf of FAB against**
**Ponzi Scheme Defendants and the BVI Entities)**

118.     Derivative Plaintiff Libsyn on behalf of FAB incorporates by reference each of its allegations herein.

119.     The conduct of the Ponzi Scheme Defendants and the BVI Entities violated the Colorado Securities Act in that in connection with the offer, sale, or purchase of securities in Colorado, the Ponzi Scheme Defendants and the BVI Entities directly or indirectly:

a.     employed a device, scheme or artifice to defraud;

b.     made written and oral untrue statements of material fact or omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; or

c.     engaged in acts, practices or courses of business which operated and would operate as a fraud and deceit on investors

all in violation of C.R.S. § 11-51-501(1).  The Ponzi Scheme Defendants and the BVI Entities acted knowingly, recklessly or with intent to defraud in purchasing and/or selling securities in FAB.

120.     As a result of their conduct in violation of C.R.S. § 11-51-501(1), the Ponzi Scheme Defendants and the BVI Entities are liable to FAB for such legal and equitable relief as the Court deems appropriate, including rescission, damages, interest, costs, and reasonable attorneys' fees.

**Eighth Claim for Relief (In the Alternative)**
**(Fraudulent Concealment or Nondisclosure)**
**(Derivative Claim by Libsyn on behalf of FAB against**
**Ponzi Scheme Defendants and the BVI Entities)**

121.     Derivative Plaintiff Libsyn on behalf of FAB incorporates by reference each of its allegations herein.

122.     The Ponzi Scheme Defendants and the BVI Entities knowingly concealed or failed to disclose a material, existing fact that in equity and good conscience they should have disclosed and that they had a duty to disclose.

123.     FAB was ignorant of the fact being concealed or not disclosed.

124.     The Ponzi Scheme Defendants and the BVI Entities intended that FAB act on the concealed or undisclosed fact.

125.     FAB acted on the concealed or undisclosed fact and incurred damages as a result.

126.     As a result of their conduct, the Ponzi Scheme Defendants and the BVI Entities are liable to FAB for such legal and equitable relief as the Court deems appropriate, including rescission, damages, interest, costs, and reasonable attorneys' fees.

**Ninth Claim for Relief (In the Alternative)**
**(Fraudulent Representation)**
**(Derivative Claim by Libsyn on behalf of FAB against**
**Ponzi Scheme Defendants and the BVI Entities)**

127.     Derivative Plaintiff Libsyn on behalf of FAB incorporates by reference each of its allegations herein.

128.     The Ponzi Scheme Defendants and the BVI Entities made a false representation of material fact, knowing the representation to be false.

129.     The Ponzi Scheme Defendants and the BVI Entities knew that FAB was ignorant of the falsity of the representation.

130.     The Ponzi Scheme Defendants and the BVI Entities made the representation intending that FAB rely upon it.

131.     FAB's reliance on the false representation resulted in damage to FAB.

132.     As a result of their conduct, the Ponzi Scheme Defendants and the BVI Entities are liable to FAB for such legal and equitable relief as the Court deems appropriate, including rescission, damages, interest, costs, and reasonable attorneys' fees.

**<u>Tenth Claim for Relief (In the Alternative)</u>**
**(Constructive Trust)**
**(Derivative Claim by Libsyn on behalf of FAB against**
**Ponzi Scheme Defendants and the BVI Entities)**

133.     Derivative Plaintiff Libsyn on behalf of FAB incorporates by reference each of its allegations herein.

134.     As a result of the wrongdoing as set forth herein, the Ponzi Scheme Defendants and the BVI Entities are holding Libsyn stock, a claim to Libsyn stock, and/or the proceeds and benefits to Libsyn stock, with specific knowledge of the duties and obligations they owe to Libsyn.

135.     Under these circumstances, the Ponzi Scheme Defendants and the BVI Entities must retain and may not disburse Libsyn stock, a claim to Libsyn stock, and/or the proceeds and benefits to Libsyn stock in good conscience.

136.     FAB is entitled to the imposition of a constructive trust upon the Libsyn stock, a claim to Libsyn stock, and/or the proceeds and benefits to Libsyn stock, converting the Ponzi Scheme Defendants and the BVI Entities into a trustee for the benefit of FAB.

**Eleventh Claim for Relief (In the Alternative)**
**(Violation of Williams Act (including 15 U.S.C. § 78m and 17 C.F.R. § 240.13d-1))**
**(Derivative Claim by Libsyn on behalf of FAB**
**against Ponzi Scheme Defendants and the BVI Entities)**

137.     Derivative Plaintiff Libsyn on behalf of FAB incorporates by reference each of its allegations herein.

138.     The conduct of the Ponzi Scheme Defendants and the BVI Entities described herein has caused and is causing substantial and irreparable injury to FAB, for which FAB has no adequate remedy at law, and will continue to cause such injury unless this Court enjoins their wrongful conduct.

139.     As a result of this conduct, FAB is entitled to injunctive relief, as described in the Demand for Relief, preventing the wrongful conduct of the Ponzi Scheme Defendants and the BVI Entities, including but not limited to, barring them, their agents, employees, partners, or others acting in concert with them, from voting or directing the voting of the Wrongful Stockholdings or acquiring an additional beneficial ownership interest in any equity securities of Libsyn, nor of any person controlling Libsyn.

**Twelfth Claim for Relief (In the Alternative)**
**(Declaratory Relief)**
**(Derivative Claim by Libsyn on behalf of FAB against All Defendants)**

140.     Derivative Plaintiff Libsyn on behalf of FAB incorporates by reference each of its allegations herein.

141.     FAB was the lawful owner of Libsyn stock and distributed one share of Libsyn stock to each stockholder of FAB in the Spin-Off.

142.     The FAB stock issued to the Ponzi Sceme Defendants and BVI Entities was issued in a fraudulent transaction and should be declared void.

143.     The circumstances described herein with respect to Libsyn stock, a claim to Libsyn stock, and/or the proceeds and benefits to Libsyn stock claimed by the Ponzi Scheme Defendants and the BVI Entities constitute failure of consent, impossibility, failure of condition, failure of consideration, and/or fraud, among other things.

144.     As a direct and proximate result of these circumstances, FAB is entitled to a declaration, pursuant to F.R.C.P. 57 and 28 USC §2201, that the Libsyn stock, a claim to Libsyn stock, and/or the proceeds and benefits to Libsyn stock claimed by the Ponzi Scheme Defendants and BVI Entities is null and void, and is of no force and effect, as well as judgment rescinding any transaction by which the Ponzi Scheme Defendants and BVI Entities acquired Libsyn stock, a claim to Libsyn stock, and/or the proceeds and benefits to Libsyn stock and rescissionary damages.

## VI.  **Demand for Relief**

WHEREFORE, Plaintiff Libsyn, individually on its own behalf and, in the alternative, derivatively on behalf of FAB, demands the following relief:

A.     On the First and Seventh Claims for Relief, judgment against the Ponzi Scheme Defendants and the BVI Entities for Securities Fraud - Colorado Securities Act - for such legal and equitable relief as the Court deems appropriate, including rescission, damages, interest, costs, and reasonable attorneys' fees;

B.     On the Second and Eighth Claims for Relief, judgment against the Ponzi Scheme Defendants and the BVI Entities for Fraudulent Concealment or Nondisclosure for such legal and equitable relief as the Court deems appropriate, including rescission, damages, interest, costs, and reasonable attorneys' fees;

C.      On the Third and Ninth Claims for Relief, judgment against the Ponzi Scheme
Defendants and the BVI Entities for Fraudulent Representation for such legal and equitable relief
as the Court deems appropriate, including rescission, damages, interest, costs, and reasonable
attorneys' fees;

D.      On the Fourth and Tenth Claims for Relief, judgment against the Ponzi Scheme
Defendants and the BVI Entities for Constructive Trust for the imposition of a constructive trust
upon the Libsyn stock, a claim to Libsyn stock, and/or the proceeds and benefits to Libsyn stock,
converting the Ponzi Scheme  Defendants and the Doe Defendants into a trustee for the benefit
of Libsyn;

E.      On the Fifth and Eleventh Claims for Relief, judgment against the Ponzi Scheme
Defendants and the BVI Entities for an injunction preventing the wrongful conduct of the Ponzi
Scheme Defendants and the BVI Entities, including but not limited to, barring them, their agents,
employees, partners, or others acting in concert with them, from voting or directing the voting of
the Wrongful Stockholdings or acquiring an additional beneficial ownership interest in any
equity securities of Libsyn, nor of any person controlling Libsyn.

F.      On the Sixth and Twelfth Claims for Relief, judgment against all Defendants for a
declaration, pursuant to F.R.C.P. 57 and 28 U.S.C. §2201, that the Libsyn stock, a claim to
Libsyn stock, and/or the proceeds and benefits to Libsyn stock claimed by the Ponzi Scheme
Defendants and the BVI Entities are null and void, and is of no force and effect, as well as
judgment rescinding any transaction by which the Ponzi Scheme Defendants and BVI Entities
acquired Libsyn stock, a claim to Libsyn stock, and/or the proceeds and benefits to Libsyn stock

and rescissionary damages, declaring that the Resolution of the Libsyn Board of Directors was and is duly authorized.

      G.      On all Claims for Relief, entry of an injunction, including, but not limited to,

           (a)      Enjoining the voting, trading, assigning, and transferring of any and all of the Wrongful Stock Holdings on the transfer records of Libsyn/FAB or otherwise as approved by Libsyn/FAB in writing.

           (b)      Enjoining any action by Defendants that is contrary to the Resolution by the Libsyn board of directors, dated November 25, 2020.

      H.      As to all Claims for Relief, for attorney's fees and costs, expert witness fees, pre-judgment and post-judgment interest (including, but not limited to, moratory interest) as allowed by law, and for such further relief as the Court deems just and proper.

## VII. <u>Jury Demand</u>

Plaintiff Libsyn, individually on its own behalf and, in the alternative, derivatively on behalf of FAB, demands a jury trial on all claims and issues so triable.

DATED:  November 25, 2020.

                        Respectfully submitted,

                        SHERMAN & HOWARD L.L.C.

                        *s/ Peter G. Koclanes*
                        Peter G. Koclanes

                        *s/ Kellie Nelson Fetter*
                        Kellie Nelson Fetter

                        633 17th Street, Suite 3000
                        Denver, Colorado 80202
                        Telephone:  (303) 297-2900
                        Facsimile:  (303) 298-0940
                        Email:  pkoclanes@shermanhoward.com
                                    kfetter@shermanhoward.com

                        *ATTORNEYS FOR PLAINTIFF*
                        *LIBERATED SYNDICATION, INC.*

## **VERIFICATION**

I, Richard Heyse, Chief Financial Officer and Treasurer of Liberated Syndication, Inc., first being sworn on oath, have read the above and foregoing Verified Complaint, and declare the contents to be true and correct to the best of my knowledge, information and belief.

_____
Richard Heyse

STATE OF PENNSYLVANIA          )
                               ): ss.
COUNTY OF ALLEGHENY            )

Subscribed, sworn to, and acknowledged before me by Richard Heyse, Chief Financial Officer and Treasurer of Liberated Syndication, Inc., on behalf of Liberated Syndication, Inc.

Witness my hand and official seal.

My commission expires _November 14, 2022_

[SEAL]

Commonwealth of Pennsylvania - Notary Seal
VALERIE MILLER - Notary Public
Allegheny County
My Commission Expires Nov 14, 2022
Commission Number 1286828

_____
Notary Public